UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                      Case No. 23-CR-149

PRECIOUS CRUSE,

        Defendant.

---

## UNITED STATES' MEMORANDUM IN SUPPORT OF PRELIMINARY ORDER OF FORFEITURE IN THE AMOUNT OF $780,600.07

---

    The United States of America submits this memorandum in support of its motion for a preliminary order of forfeiture in the amount of $780,600.07. This memorandum aims to provide an overview of the procedures and law governing forfeiture as well as the factual basis for the amount of forfeiture requested.

    **I.    BACKGROUND**

    Defendant, Precious Cruse, was convicted of nine execution counts related to a scheme to defraud a health care benefit program, in violation of Title 18, United States Code, Section 1347, as well as three counts of making false statements to a health care benefit program, in violation of Title 18, United States Code, Section 1035. Cruse was also convicted of charges related to the anti-kickback statute and money laundering.

    As stated in the indictment, given the defendant's conviction of a scheme to defraud a health care benefit program, the United States seeks a money judgment of forfeiture equal to the amount of proceeds obtained as a result of those offenses. *See* 21 U.S.C. § 853. In order to satisfy

such money judgment, the United States may seek to forfeit substitute property pursuant to Title 21, United States Code, Section 853(p). *See* Indictment, Forfeiture Notice (ECF 1).

## II. APPLICABLE ASSET FORFEITURE LAW

### A. *Forfeiture is a Mandatory Form of Punishment*

As an initial matter, forfeiture is mandatory. Title 28, United States Code, Section 2461(c) states that "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment . . . . If the defendant is convicted of the offense giving rise to the forfeiture, the court <u>shall</u> order the forfeiture of the property as part of the sentence . . . . " 28 U.S.C. §2461(c) (emphasis added).

### B. Procedure for Proving Forfeiture

The United States bears the burden of proving its right to forfeiture by a preponderance of the evidence. *United States v. Patel*, 131 F.3d 1195, 1200 (7th Cir. 1997). The United States can meet that burden "based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B); *see also United States v. Capoccia*, 503 F.3d 103, 109–10 (2d Cir. 2007) (forfeiture determination can be based both on evidence presented at forfeiture hearing and evidence already in the trial record).

If the Court holds a forfeiture hearing, pursuant to Rule 32.2(b)(1)(B), the traditional rules of evidence do not apply, and the Court may consider hearsay and other inadmissible evidence so long as it is sufficiently reliable. *See* Fed. R. Evid. 1101(d)(3) (providing that that Rules of Evidence are inapplicable in sentencing proceedings); *United States v. Ali*, 619 F.3d 713, 720 (7th Cir. 2010) (because forfeiture is part of sentencing, less stringent evidentiary standards apply in

2

Case 2:23-cr-00149-PP    Filed 01/16/26    Page 2 of 13    Document 93

the forfeiture phase of the trial; the evidence need only be "reliable"); *see also United States v. Smith*, 770 F.3d 628, 640-41 (7th Cir. 2014) (citing *United States v. Gonzalez*, 608 F.3d 1001, 1006 (7th Cir. 2010)).

In determining the appropriate forfeiture amount, courts recognize that forfeiture aims at different goals than other financial aspects of a sentence, like restitution. Indeed, while restitution is remedial in nature, forfeiture is "designed simply as a form of punishment." *United States v. Peters*, 732 F.3d 93, 98 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 2740 (2014). "The amount of forfeiture 'must bear some relationship to the gravity of the offense that it is designed to punish.'" *Id.* (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998)); *see also Libretti v. United States*, 516 U.S. 29, 38-39 (1995) (noting that Congress intended forfeiture to operate as a punishment for criminal conduct).

Although the amount of forfeiture must bear a relationship to the crime at issue, a court's calculations of forfeiture are not expected to be an exact science, and extrapolations from the evidence, established by a preponderance of the evidence, are appropriate. *United States v. Treacy*, 639 F.3d 32, 48 (2d Cir. 2011); *United States v. Ayika*, 837 F.3d 460 (5th Cir. 2016) (affirming amount of money judgment in a health care fraud case based on accountant's review of representative sample of submitted claims); *United States v. Uddin*, 551 F.3d 176, 180 (2d Cir. 2009) (forfeiture in food stamp fraud case properly entered in amount equal to loss amount that was calculated based on extrapolation); *United States v. Taquarius Kaream Ford*, 296 F. Supp. 3d 1251, 1260 (D. Ore. 2017) ("calculation of forfeiture does not demand mathematical exactitude" and courts are permitted to make reasonable extrapolations from the evidence). In making the determination of forfeiture amount, "circumstantial evidence and estimated quantities may be used as evidence to support a money judgment." *United States v. Stewart*, No. 8:14CR288, 2015 WL

6039742, at *4 (D. Neb. Oct. 15, 2015) (citing *United States v. Pierre*, 484 F.3d 75, 86 (1st Cir. 2007) (affirming money judgment based on co-conspirator's estimates of drug proceeds collected per week over course of conspiracy, as corroborated by records of expenditures by defendant)).

### *C. The Forfeitable Amount Includes All Gross Proceeds Traceable to the Scheme*

1. The Forfeitable Amount is Not Limited to the Execution Counts

At trial, Defendant was convicted of nine counts of health care fraud, in violation of 18 U.S.C. § 1347. Like bank fraud, mail fraud, and wire fraud, health care fraud is a *scheme* offense. Indeed, the jury instructions for health care fraud are explicitly "based on the instructions applicable to mail/wire/bank fraud statutes, 18 U.S.C. §§ 1341, 1343, 1344." Seventh Circuit Pattern Jury Instructions, 18 U.S.C. § 1347(a)(1)—Definition of "Scheme," Committee Comment, at 656. As a result of the nature of the offense, the indictment in this case tracked that scheme framework by first describing the way in which Defendant operated the fraudulent scheme (ECF 1, ¶¶ 2 – 4) and then charging Defendant with nine specific examples of how she *executed the scheme* (*id.* at ¶ 5).

In cases, like this one, where a defendant is convicted of a scheme, it is black-letter law that forfeiture is based on the *entire scheme*, not the amounts charged as executions. *See, e.g.*, *United States v. Venturella*, 585 F.3d 1013, 1017 (7th Cir. 2009) (explaining that forfeiture in a mail fraud case "is not limited to the amount of the particular mailing but extends to the entire scheme"). That is because a fraud-scheme conviction "necessarily includes a fraudulent scheme as a whole, [which means that] the proceeds of the crime of conviction consist of the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted." *United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016) (citations to Second and Eleventh Circuit decisions omitted).

*Venturella* is directly on point. In that case, the defendant was charged with two different mail fraud schemes. She pled guilty to one count of mail fraud, which specified a single mailing involving $478. The defendant in *Venturella* claimed the criminal forfeiture had to be limited to the amount associated with that count of conviction, *i.e.*, $478. The Seventh Circuit rejected that argument. The Court explained that, because the indictment charged the defendant with an overall scheme and each count was an act in furtherance of the scheme, a conviction on one count was the equivalent of a conviction on the entire scheme. *Venturella*, 585 F.3d at 1017-18; *see also Untied States v. Lo*, 839 F.3d 777, 792-93 (9th Cir. 2016) (applying *Venturella*). Indeed, as the Court in *Lo* explained: "Because the proceeds from a mail fraud or wire fraud offense include funds obtained 'as the result of the commission of the offense,' and the commission of such a mail fraud or wire fraud offense necessarily includes a fraudulent scheme as a whole, the proceeds of the crime of conviction consist of the funds involved in that fraudulent scheme, including additional executions of the scheme that were not specifically charged or on which the defendant was acquitted." *Lo*, 839 F.3d at 793.

These holdings are not unique to the Seventh and Ninth Circuits. *See United States v. Reed,* 908 F.3d 102, 125-26 (5th Cir. 2018) (defendant convicted of fraud is liable for the proceeds of the entire scheme, including conduct occurring outside of the statute of limitations); *United States v. Cox*, 851 F.3d 113, 128-129 (1st Cir. 2017) (following *Venturella* and holding that defendant must forfeit proceeds of the entire scheme, including uncharged executions); *United States v. Emor*, 850 F. Supp. 2d 176, 217 (D.D.C. 2012) (following *Venturella* and holding that defendant must forfeit the proceeds of the entire fraud scheme); *United States v. Capoccia*, 503 F.3d 103, 117–18 (2d Cir. 2007) (stating that, "[w]here the conviction itself is for executing a scheme, engaging in a conspiracy, or conducting a racketeering enterprise," the proceeds for purposes of

forfeiture include the proceeds of "that scheme, conspiracy, or enterprise"); *see also United States v. Hasson*, 333 F.3d 1264, 1279 (11th Cir. 2003) (holding, for purposes of forfeiture, that "[i]n determining what transactions involved the proceeds of mail and wire fraud, the jury was not restricted to the three substantive counts of wire fraud on which it returned a guilty verdict" and could consider evidence of fraud adduced in support of an additional money laundering count).

That the instant case involves a scheme to commit health care fraud, rather than mail, bank, or wire fraud, makes no difference. Indeed, courts in this district have ordered forfeiture for the full amount attributable to the health care fraud scheme in other cases. *See, e.g., United States v. Charmoli,* Case No. 20-CR-242-LA (E.D. Wis.), at Dkt. No. 105. Courts in other districts have done the same. *See e.g.*, *United States v. Boesen*, 473 F.Supp.2d 932, 952-54 (S.D. Iowa 2007) (applying the forfeiture principles of bank fraud to a health care fraud case and granting government's motion for forfeiture of all gross proceeds of the entire scheme); *United States v. Dillon*, 2017 WL 4870910, * 2 (D. Idaho Oct. 27, 2017), vacated and remanded on other grounds by *United States v. Dillon*, 749 F. App'x 541 (9th Cir. 2018) (defendant who pled guilty to 24 executions of health care fraud scheme must forfeit proceeds of entire four-year scheme, not just proceeds of the 24 charged counts; "[f]or offenses charging a "scheme or artifice"—as was charged here—the court may forfeit proceeds generated over the course of the entire scheme, not just by the particular executions of it charged in the counts of conviction"); *United States v. Ahmed*, 2017 WL 3149336, *15 (E.D.N.Y. Jul. 25, 2017) (following *Boesen*; defendant required to forfeit millions of proceeds derived from false Medicare billings, not limited to the billings alleged in the indictment and proven at trial); *United States v. Jafari*, 663 F. App'x 18, 2016 WL 5340280, at *24 (2d Cir. Sept. 22, 2016) (applying *Capoccia* and finding it "defeats Jafari's challenge to an order requiring her to forfeit the unlawful proceeds of uncharged and acquitted conduct found by

a preponderance to have been committed in furtherance of the proved health-care scheme"); *United States v. Adegboye*, 2011 WL 5025531, *3 (W.D. Okla. Oct. 21, 2011) (following *Boesen*; defendant convicted of five substantive counts of health care fraud involving $16,095 must forfeit the $299,694 in proceeds of the entire scheme, even though he was acquitted on a related conspiracy count).

Just like with the wire and mail fraud statutes, proof of a *scheme* to commit a fraud is the first element of a charge under 18 U.S.C. § 1347. That means that the jury could not have convicted Defendant of any count of health care fraud without first concluding that the government proved, beyond a reasonable doubt, that "there was a scheme to defraud a health care benefit program as charged in the indictment" and that Defendant carried out that scheme. *See* ECF 54, Jury Instructions, p. 22. Thus, when the jury convicted Defendant of all nine counts of health care fraud, it also necessarily convicted Defendant of carrying out a *scheme* to commit health care fraud. The individual executions of that scheme, as charged (and of which Defendant was convicted) in Counts One through Nine, are merely "incident to an essential part of the scheme" or a "step in the plot." *Ventruella*, 585 F.3d at 1017 (quoting *United States v. Mooney*, 401 F.3d 940, 946 (8th Cir. 2005)). The individual executions, or counts, are, in other words, *examples* of the misrepresentations Defendant made to Medicaid to effectuate the overall *scheme.* But the charged executions do not limit or define the overall scheme nor the total amount of forfeiture that is appropriate after conviction. Instead, forfeiture in this § 1347 case must include the gross proceeds of the entire scheme, including executions that were not charged in the indictment. *Id.*

Indeed, courts have held that when a defendant has been convicted of a scheme, forfeiture can include amounts obtained even for acquitted executions of that scheme. *See e.g.*, *Venturella*, 585 F.3d at 1018 ("We have also interpreted other statutes authorizing forfeiture to include the

total amount gained by the crime or criminal scheme, even for counts on which the defendant was acquitted."); *United States v. Genova*, 333 F.3d 750, 762–63 (7th Cir. 2003) (holding that, because criminal forfeiture is part of sentencing, it may extend to conduct alleged in counts of which defendant was acquitted if the court finds that the property is forfeitable by a preponderance of the evidence); *United States v. Fruchter*, 411 F.3d 377, 384 (2d Cir. 2005) (holding that defendant was jointly and severally liable for proceeds of mail fraud conduct (despite his acquittal on mail fraud charges) because those proceeds were foreseeable proceeds of the RICO conspiracy offense of which defendant was convicted; explaining that "the defendant 'is not being punished . . . for committing the substantive acts found to be 'not proven.' He is being punished for conducting the affairs of an enterprise through a pattern of racketeering activity'").

In an opinion authored by now-Justice Sotomayor, the Second Circuit clarified this line of precedent. The Second Circuit was careful to explain that, although it is misleading to say, without qualification, that proceeds of acquitted conduct are subject to forfeiture, it is accurate and consistent with the statute to hold that, where a conviction is for the execution of a scheme, the government need only establish that the forfeited assets have the "requisite nexus" to that scheme. *Capoccia*, 503 F.3d at 117-18 (reversing forfeiture of proceeds defendant obtained before timeframe of offense of conviction). As *Venturella* and *Genoa* make clear, assets obtained as a result of a scheme that forms the basis of the conviction can have that requisite nexus even if they were obtained through acquitted *executions* of the scheme (of which there are none in this case, as the Defendant was found guilty on all counts).

        2.    The Appropriate Amount of Forfeiture is Gross Proceeds with No Set-Offs for the "Value" of Services Provided.

8

Case 2:23-cr-00149-PP   Filed 01/16/26   Page 8 of 13   Document 93

The caselaw is also clear that in the health care fraud context, a defendant is not entitled to a "set-off" for any amount that she might have received absent the fraud. *United States v. Bikundi*, 926 F.3d 761, 792-93 (D.C. Cir. 2019) (noting that defendant's argument for a set-off value of legitimate services provided "overlooks the breadth of the forfeiture statute: 'gross proceeds traceable to' the fraud include 'the total amount of money brought in through the fraudulent activity, with no costs deducted or set-offs applied.'" (quoting *United States v. Poulin*, 461 F. App'x 272, 288 (4th Cir. Jan. 18, 2012)); *Poulin*, 461 F. App'x at 288 (rejecting the defendant's argument that he should have received a set-off for the amount he "would have received had he billed properly for services actually rendered" because the statute calls for forfeiture of gross "'proceeds'—as opposed to 'profits'").

Courts have routinely applied the no-set-off rule to deny set-offs for the value of services actually provided. *United States v. Hui Chen*, 350 F. App'x 520, 523-24 (2d Cir. 2009) (unpublished) (concluding that because the applicable statute required the forfeiture of "gross proceeds," "there is no merit to defendant's argument that she should be permitted to subtract the market value of the 'services' she provided"); *United States v. Jafari*, 85 F. Supp. 3d 679, 687 (W.D.N.Y. 2015) ("In other words, Defendant has no right to apply a set-off for the amount she would have received had she billed properly for services actually rendered."); *United States v. Palazzo*, 2008 WL 5381581, *10 (E.D. La. Dec. 18, 2008) (rejecting defendant's request to set-off forfeiture amount by the value of services actually provided).

Moreover, the rule against set-off applies without regard to the "medical necessity" of the services and procedures provided. *See, e.g.*, *United States v. Louthian*, 2013 WL 594232, *4 (W.D. Va. Feb. 15, 2013) (rejecting defendant's argument that the money judgment amount should be reduced by the value of medically necessary services on the grounds that the forfeiture statute

requires forfeiture of "'gross proceeds' of the underlying offenses" and holding that gross proceeds includes all money brought in through fraudulent activity).

The rule against set-offs makes good sense in light of the purpose that forfeiture serves, particularly in the health care fraud context: the deterrence and punishment of health care fraud, which leads to multiple societal harms including, but not limited to, the increase in health care costs for all. *See, e.g.*, *Boesen*, 473 F. Supp. 2d at 954 ("To allow the perpetrator of a fraud to mitigate his eventual forfeiture exposure by such a set-off procedure would seem fundamentally inconsistent with the purpose of the statute and challenging, if not impossible, in its application from case to case.").

> 3. Forfeiture Includes All Gross Proceeds Received as a Result of the Scheme, Regardless of the Source of Funds.

The relevant forfeiture provision, Section 982(a)(7), provides that Defendant must forfeit all property that "constitutes or is derived, directly or *indirectly*, from gross proceeds *traceable to the commission* of the offense." 18 U.S.C. 982(a)(7) (emphasis added). This is often referred to as the "but for" test because courts apply it to forfeit all property defendant would not have obtained or retained but for the criminal offense. *See, e.g.*, *United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009) (applying the "but for" test and holding that health care provider convicted of Medicare fraud is liable to forfeit the funds she received from Medicare as well as the funds she received from private insurers because she would not have received either but for her fraudulent billings).

Courts have even applied this rule to forfeit *all* revenues of a business when the business is "permeated with fraud" or where revenues are the result of the business's "fraudulent beginnings." *See, e.g.*, *United States v. Warshak*, 631 F.3d 266, 332-33 (6th Cir. 2010). In

*Warshak*, for example, the United States sought forfeiture of all of the revenues of the defendant's business. Defendant asserted that the business underwent significant efforts to bring itself into regulatory compliance, that many sales were legitimate, and that many of the revenues came in at a time that post-dated the bank fraud. *Id.* The Court rejected those arguments. It concluded that the United States proved, by a preponderance of the evidence, that fraud permeated the entire business and that the business would not have been able to generate sales if the scheme hadn't been implemented in the first place. *Id.*

Other courts have followed suit. *See, e.g.*, *United States v. Prasad*, 18 F.4th 313, 326 (9th Cir. 2021) (including in forfeiture judgment funds received by defendant for legitimate work performed by visa applicants whose visas were obtained by fraud because those amounts would not have been received absent the initial fraud); *Hoffman-Vaile*, 568 F.3d at 1344-45 (including in forfeiture judgment amounts paid by patients and private insurers even though health care fraud charge was based on scheme to unlawfully bill Medicare).

Courts in this district have issued similar and instructive opinions on these forfeiture issues as well. For example, in *United States v. Hofschulz*, Case No. 18-CR-145-PP (E.D. Wis.), Defendants were convicted of running a pill mill to distribute prescription opioids unlawfully. The indictment charged the defendants with a conspiracy as well as with individual counts of unlawful distribution in furtherance of that conspiracy. *Id.*, at ECF 1. After the jury convicted, the United States sought a money judgment of forfeiture for *all* of the money earned by the clinic during the time period covered by the conspiracy. (ECF 182). This Court granted that motion, over the defendant's objections that some of the money the clinic took in must have come from legally issued prescriptions, particularly given that the clinic employed prescribers who were not indicted. (ECF 220). The Court rejected that argument. It held that all revenues were properly forfeitable

because the evidence at trial demonstrated, by a preponderance, that Defendant's "practices generally were not consistent with the usual course of professional medical practice and not for legitimate medical purposes." *Id.* at 44. This Court made this ruling with regard to forfeiture even though it ultimately concluded, for purposes of calculating drug quantities for the offense-level, that not every prescription issued by Defendant during the conspiracy was unlawful. Similarly, in *United States v. Charmoli*, Case No. 20-CR-242-LA (E.D. Wis.), the Court granted the government's motion for forfeiture, over the defendant's objection, for all gross proceeds traceable to the healthcare fraud scheme. ECF 105.

### IV. The Application of Asset Forfeiture Law to the Facts of The Instant Case

####    A.  *Defendant's Scheme, as Proven at Trial*

During the trial of this case, the United States introduced ample evidence of Defendant's scheme, including evidence that tended to show that nearly every claim submitted by her company, Caring Through Love, was false.

The evidence at trial, of which this Court is well aware, included testimony from Defendant's employees, clients of her company, law enforcement officers who reviewed documentation supporting Defendant's billing, and representatives of Medicaid who explained the billing data and patterns. The evidence showed that Cruse billed nearly every encounter with clients at two-hours and billed for the maximum allowable each month the majority of the time for each client. The evidence also showed that, in reality, Defendant and her employees interacted with their clients for minutes, if at all. And the evidence showed that Defendant repeatedly billed for more hours than there are in a day and while she was traveling.

The totality of the evidence showed that fraud permeated the company, just as it did in *Warshak* and *Hofschulz*. The evidence and the law thus supports an order of forfeiture in the full amount that Medicaid paid to Cruse, which is $780,600.07.

## III.     CONCLUSION

The United States asks this Court to issue a preliminary order of forfeiture in the amount of $780,600.07.

Respectfully submitted at Milwaukee, Wisconsin this 16th day of January, 2026.

BRAD D. SCHIMEL
United States Attorney

By:     *s/Julie F. Stewart*
JULIE F. STEWART
KATE M. BIEBEL
Assistant United States Attorneys
Attorneys for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700